# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 05-579V
(Not to be Published)

* * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| HOLLY AUSTIN, *as parent of* K.A., *a minor*, | |
| Petitioner, | Special Master Corcoran |
| v. | Dated: July 31, 2019 |
| | Attorney's Fees and Costs; Interim Fees; Autism Claim. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Robert J. Krakow*, Law Office of Robert Krakow, P.C., New York, NY, for Petitioner.

*Mollie D. Gorney*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]

On May 27, 2005, Holly Austin filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] In it, Mrs. Austin alleged that a number of childhood vaccines, including the DTaP, Hep B, and pneumococcal vaccines that K.A. received on July 28, 2003; the influenza vaccine he received on December 15, 2003; the Hib vaccine he received on June 1, 2004; and the DT vaccine he received on June 8, 2004, caused him

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

to experience an encephalopathic reaction (accompanied by increased seizure activity), later manifesting as developmental regression and autism spectrum disorder. Petition (ECF No. 1) ("Pet.") at 1; Amended Petition (ECF No. 123) ("Am. Pet.") at 1-2. I issued a decision denying entitlement on May 15, 2018 (ECF No. 130), which was subsequently upheld on appeal (ECF No. 138). The case is now currently pending review by the Court of Appeals for the Federal Circuit, although present counsel has indicated that he is withdrawing from the matter (ECF No. 149).

Petitioner has requested a second interim award of attorney's fees and costs for her current counsel in the total amount of $121,644.59 (representing $104,769.95 in attorney's fees, plus $16,874.64 in costs). *See generally* Motion for Interim Attorney's Fees and Costs, filed Mar. 22, 2019 (ECF No. 144) ("Interim Fees App."); Supplemental Motion for Interim Attorney's Fees, filed Apr. 26, 2019 (ECF No. 147) ("Supp. Interim App.").

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's request, awarding at this time interim fees and costs in the total amount of **$100,690.60** (representing $83,815.96 in attorney's fees, plus $16,874.64 in costs).

## PROCEDURAL HISTORY

As noted above, this action was initiated in May 2005, nearly thirteen years ago. Pet. at 1. Petitioner filed this claim in conjunction with the Omnibus Autism Proceedings ("OAP")[3], resulting in a long hiatus in the progress of this matter while the OAP was concluded. The case was formally separated from the OAP on January 12, 2011, in light of Petitioner's expressed desire to proceed on an alternate theory. *See* Order, dated Jan. 12, 2011 (ECF No. 15); Order, dated Sept. 30, 2011 (ECF No. 18). Petitioner filed the majority of the medical records associated with this case in February 2012 (ECF No. 27), and the parties thereafter began filing expert reports.

Petitioner's original counsel withdrew from the case on August 7, 2012 (ECF No. 38),[4] and she subsequently obtained present counsel in early mid-2013 (ECF Nos. 52-53).[5] Petitioner asks that her current counsel, Mr. Robert Krakow, be reimbursed at varying rates for work performed from 2013-2019 (from the time he appeared in the case to the present) for a total of $104,769.95. Interim Fees App. at 16. Specifically, Petitioner requests $385 per hour for Mr. Krakow's work in

---

[3] In the OAP, thousands of petitioners' claims that certain vaccines caused autism were joined for purposes of efficient resolution. A total of eleven lengthy decisions by special masters, the judges of the U.S. Court of Federal Claims, and the panels of the U.S. Court of Appeals for the Federal Circuit unanimously rejected these claims. The decisions found no persuasive evidence that the MMR vaccine or thimerosal-containing vaccines caused autism. The OAP proceedings concluded in 2010.

[4] Interim fees were awarded to Petitioner's original counsel on July 25, 2011 (ECF No. 34).

[5] Present counsel began work on this matter on or about August 1, 2013 (and thus only requests fees from this period forward). Interim Fees App. at 5.

2013, with increases to $396 per hour in 2014; $413 per hour in 2015; $425 per hour in 2016; $435 per hour in 2017; $450 per hour in 2018; and $464 per hour in 2019. *Id.* In addition, Petitioner requests rates ranging from $125-$156 per hour for paralegal work (at times completed by Mr. Krakow, but billed at a lower rate) completed from 2013-2019. *Id.*

Petitioner also requests $16,874.64 in attorney's costs (for obtaining medical records, expert fees, copy costs, and postage charges). Ex. 2 to Interim Fees App. at 33. Petitioner does not request personal costs in connection with this matter. Ex. 4 to Interim Fees App. at 1 (General Order No. 9 Statement).

Respondent reacted to the request on March 27, 2019, and May 1, 2019, respectively, deferring to my discretion as to whether Petitioner has met the legal standards for an interim fees and costs award. *See* Response, dated Mar. 27, 2019 (ECF No. 145) at 2; Response, dated May 1, 2019 (ECF No. 148) at 1. Respondent otherwise represents that the statutory and other legal requirements for an award of attorney's fees and costs are met, and he recommends that if an interim award is appropriate, I calculate a reasonable award.

**ANALYSIS**

**I.      Reasonable Basis**

At the time this case was filed, Petitioner's theory of causation (arguing that multiple childhood vaccines resulted in an encephalopathic reaction, later manifesting as autism or autism-like symptoms) mirrored arguments set forth in many former OAP cases that resulted in decisions denying entitlement and dismissing the theory as unpersuasive. Although Respondent did not challenge Petitioner's interim fees request on reasonable basis grounds, Petitioner maintained in her fees application that present counsel acted expeditiously in reviewing the claim herein and monitoring the developments in the case law related to the medical theory relied upon to support causation in the matter. Interim Fees App. at 11-14.

Despite this claim's underlying deficiencies, I find the matter had sufficient reasonable basis to justify an interim award of fees (and Respondent has not argued otherwise). In two recent parallel decisions, I specifically analyzed Mr. Krakow's actions with regard to filing an autism claim (asserting a causation theory similar to the one alleged in the present case), and I took note of his efforts to investigate the claim's viability in light of prior unsuccessful claims, and to modify his proposed theory in light of the OAP's conclusion. *See Johnson v. Sec'y of Health & Human Servs.*, No. 15-643, 2018 WL 2772684 (Fed. Cl. Spec. Mstr. Apr. 13, 2018); *Hamilton v. Sec'y of Health & Human Servs.*, No. 14-785V, 2018 WL 2772197 (Fed. Cl. Spec. Mstr. Apr. 12, 2018). The facts of this case are similar to those referenced above. It is certainly the case that at the time Mr. Krakow appeared in this matter, many post-OAP claims were still pending in the Program,

and therefore the kinds of facts asserted in this claim – facts I would now deem, in 2019, to *not* constitute objective evidence in support of a reasonable Program claim – would then have been considered as objective support sufficient for reasonable basis to exist. Even so, I conclude that sufficient reasonable basis existed for Petitioner's claim, despite its patent underlying weaknesses.

In making this award, however, I note that Petitioner benefits somewhat from the case's protracted life, and existence throughout the time period in which the Office of Special Masters has resolved countless autism claims asserting a variety of causation theories. Had the claim been filed in the past year or two, I would readily find it lacked reasonable basis entirely – and deny *all* fees. Counsel should take due notice not to bring such claims in the future (absent a stunning and reliable medical discovery that changes the existing analysis entirely).

## II.     Legal Standard Applicable to Interim Fees and Costs Requests

I have previously discussed at length the legal standards, and other relevant considerations, applicable to interim fees requests. *See generally Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701, at *6-9 (Fed. Cl. Spec. Mstr. May 20, 2016). The best way of evaluating the propriety of an interim award is by considering all the factors together and balancing them out. *See, e.g.*, *Al–Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5-6 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In addition, as numerous special masters have observed, an attorney's withdrawal can be an appropriate occasion for an interim award, even though it is not automatically so. *Smirniotis v. Sec'y of Health & Human Servs.*, No. 14-617V, 2016 WL 859057, at *2 (Fed. Cl. Spec. Mstr. Feb. 12, 2016) (citations omitted).

Based on my review, Petitioner has made a showing sufficient to justify an award of interim fees and costs. Criteria that I have found to be important in determining whether an interim award should be permitted include: 1) if the amount of fees requested exceeds $30,000; 2) where expert costs are requested, if the aggregate amount is more than $15,000; or 3) if the case has been pending for more than 18 months. *See, e.g.*, *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017). The facts relevant to this matter meet these criteria: the case has been pending since 2005, and the total amount of attorney and expert fees and costs requested exceeds the minimum thresholds that I find to be appropriate. Counsel's withdrawal concludes his involvement in the matter, and I find such circumstances present an appropriate occasion for a fees award even if the matter itself continues for some time.

## III.    Amounts Requested for Petitioner's Attorney

I must now determine the magnitude of Petitioner's attorney's fee award. Whether an award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). Special masters may in their discretion reduce attorney hours *sua*

*sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended[6] on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

Petitioner asks that her counsel be reimbursed at varying rates for work performed from 2013-2019, as detailed above. In my past decisions, I have determined that Mr. Krakow's firm, located in New York, is entitled to forum rates. *See, e.g., Laderer v. Sec'y of Health & Human Servs.,* No. 09-097V, 2016 WL 3044838, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2016). The rates requested herein (spanning from 2013 through 2018) are also in line with the rates I have awarded to Mr. Krakow in the past (as well as decisions issued by other special masters). *See, e.g., Johnson v. Sec'y of Health & Human Servs.,* No. 15-643V, 2018 WL 2772684 (Fed. Cl. Spec. Mstr. Apr. 13, 2018)*; Moxley v. Sec'y of Health & Human Servs.*, No. 006-213V, 2017 WL 5080289 (Fed. Cl. Spec. Mstr. Oct. 12, 2017). Furthermore, Mr. Krakow's request of $464 per hour for work completed in 2019 is reasonable, and consistent with the forum rate chart set forth on the Court of Federal Claims's website,[7] as well as a recent decision issued by Chief Special Master Dorsey. *See*

---

[6] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs*., No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349, (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). This "Davis" exception is inapplicable here, however, because I have previously found the attorneys in question should receive forum rates.

[7] *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2019, https://www.uscfc.uscourts.gov/node/2914 (last accessed on July 26, 2019).

5

*Lubin v. Sec'y of Health & Human Servs.*, No. 17-1147V, slip op. (Fed. Cl. Spec. Mstr. May 17, 2019). I will thus award the rates requested herein without reduction.

Based on my review of counsel's billing log, the majority of the hours expended on this matter by Mr. Krakow appear to be reasonable for work spanning a five-year period (and requiring expert report filing). Despite the underlying nature of the claim, I do not find any particular billing entries to be objectionable, nor has Respondent identified any as such. However, the nature of the claim presented justifies *some* reduction in award. Mr. Krakow appeared in this case *after* the OAP's resolution – and hence was on notice that autism injury claims were not likely to succeed. He has since litigated the claim for over five years. I subsequently dismissed the claim via ruling on the record, based on my finding that (a) the facts did not establish that K.A. ever experienced an encephalopathy, and (b) the claim was no different in terms of theory presented than countless autism claims before it. That ruling was appealed and upheld – but still the matter lives on (although counsel's withdrawal while the Federal Circuit appeal is pending does suggest his awareness that further pursuit will be futile).

Under such circumstances, where counsel should recognize a claim's issues but litigates on despite diminishing returns, it is unjust to award full fees. *See, e.g.*, *Anderson v. Sec'y of Health & Human Servs.*, No. 02-1314V, 2018 WL 6787880, at *1-2 (Fed. Cl. Spec. Mstr. Nov. 16, 2018); *Pope v. Sec'y of Health & Human Servs.*, No. 14-078V, 2017 WL 5380926, at *3 (Fed. Cl. Spec. Mstr. Sept. 11, 2017); *R.V. v. Sec'y of Health & Human Servs.*, No. 08-504V, 2016 WL 7575568, at *4-5 (Fed. Cl. Spec. Mstr. Nov. 28, 2016). Accordingly (and consistent with my discretion in appropriate circumstances as discussed in *Perreira*, 27 Fed. Cl. at 34 and *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702-03 (2016) for example), I will cut the total award (which I am otherwise not reducing) by twenty percent. This means Petitioner shall receive interim fees in the sum of $83,815.96 (resulting in an overall reduction of $20,953.99).

**IV.     Requested Costs**

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are *reasonable*. *Perreira*, 27 Fed. Cl. at 34; *Presault v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 667, 670 (2002). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).

The requested costs herein (totaling $16,874.64) can be sorted into various categories – costs to obtain medical records (including mailing and copying charges), transcript fees, and expert costs. Interim Fees App. at 21-22; Ex. 2 to Interim Fees App. at 33. As to expert costs, Petitioner requests a total of $16,100.00 for an expert review conducted by Dr. Yuval Shafrir that resulted in a filed expert report. Interim Fees App. at 21-22; Ex. 5 to Interim Fees App. at 1-2. Dr. Shafrir

billed for over forty hours of work in the present matter at a rate of $350 per hour. Ex. 5 to Interim Fees App. at 1-2. This rate is consistent with what I have awarded Dr. Shafrir in my past decisions. *See, e.g.*, *Berrett v. Sec'y of Health & Human Servs.*, No. 16-011V, 2019 WL 1451308 (Fed. Cl. Spec. Mstr. Mar. 1, 2019). In addition, I find that Dr. Shafrir's report offered reasonable guidance to counsel in reviewing the case (despite its ultimate deficiencies). I will therefore compensate him in full for his work on this matter at the rate requested.

The copying, filing, and other litigation-related costs are also reasonable, and unopposed in substance by Respondent. Therefore, I will award a total of $16,874.64 in costs related to the above-captioned matter.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioner's request for interim attorney's fees and costs. I therefore award a total of **$100,690.60** (representing $83,815.96 in attorney's fees, plus $16,874.64 in costs) as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Mr. Robert Krakow, Esq.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[8]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.